IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MACK A. WEST, JR.,

                       Petitioner,

        vs.

JOSIE GASTELO, Warden, California
Men's Colony State Prison,[1]

                    Respondent.

No. 2:09-cv-03147-JKS

MEMORANDUM DECISION

Mack West, Jr., a state prisoner now represented by counsel, filed a Petition for a Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  West is in the custody of the

California Department of Corrections and incarcerated at California Men's Colony State Prison.

Respondent has answered, and West has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On November 27, 2006, West pleaded no contest in the Solano County Superior Court to

second-degree murder and second-degree robbery and admitted the use of a deadly weapon in

connection with those offenses.  On direct appeal of his conviction, the California Court of

Appeal laid out the following facts underlying this case:

> In August 1999, [West] was charged with a single count of murder ([Cal.] Pen.
> Code,1 § 187, subd. (a)).  Almost immediately thereafter the court suspended the criminal
> proceedings pursuant to section JO1368 and appointed two experts to evaluate [West's]
> competency to stand trial.  Based on the expert opinions, the court found [West]
> incompetent and he was placed in the "Trial Competency Program" at Atascadero State

---

[1]    Josie Gastelo, Warden, California Men's Colony State Prison, is substituted for
Kathleen Dixon, former Warden, California Medical Facility.  FED. R. CIV. P. 25(c).

Hospital (Atascadero).  He was returned to the court as restored to competency in December 1999.

Following a preliminary hearing in February 2000, [West] was charged by amended information with murder (§ 187, subd. (a)), robbery (§ 211), vehicle theft (Veh. Code, § 10851, subd. (a)) and assault with a deadly weapon (§ 245, subd. (a)(1)).  The information also alleged that [West] personally used a deadly weapon, a screwdriver, during the commission of the murder and robbery.  [West] entered a dual plea of not guilty and not guilty by reason of insanity.

In December 2000, following a hearing conducted pursuant to *People v. Marsden* (1970) 2 Cal.3d 118, the court found that there had been a total breakdown in communication between [West] and his court-appointed attorney.  The public defender was relieved and new counsel was appointed.

In May 2001, [West's] new attorney requested a second competency evaluation. The court again found that [West] was incompetent to stand trial and suspended the criminal proceedings.  [West] was returned to Atascadero.  In August 2002, [West] was returned to the court based on the opinion of hospital staff that [West] was competent to stand trial.  In April 2003, the court found that [West]  was competent to stand trial based on its review of "psychological reports prepared since [West's] return from [Atascadero] in August of 2002" and of a report prepared by the hospital.  The court explained that "he does understand the nature and the significance of these proceedings.  He's able to cooperate with counsel, if he chooses to do that, and it appears to the [c]ourt that Mr. West is purposely exaggerating symptoms to avoid going to trial in this matter."

In January 2004, [West's] attorney again requested that [West's] competency be evaluated after [West] refused to cooperate with the attorney or come out of a holding cell.  The case was then before a new judge, who suspended the proceedings a third time and appointed experts to evaluate [West's] competency.  The court expressly requested that the doctors "explore issues of malingering by [West]."  Following his interview with [West], Dr. Murray Eiland informed the court that while he strongly believed that [West] was malingering, he could not make a competency determination because [West] was refusing to cooperate.  He stated, "There are several reasons why I strongly believe that Mr. West is faking or exaggerating his symptoms.  During the four times I have seen him, he has described his symptoms in a very different way and has acted in a very different manner each time.  From the beginning there have also been questions about the degree to which he may have been exaggerating his symptoms.  [¶]  Throughout the time I spent with Mr. West in the latest interview, he never appropriately answered a single one of my direct question[s], which I take to be significant.  I have interviewed several thousand people suffering from psychosis during the years of my psychiatric practice.  In each case-no matter how severe the mental illness-all but a tiny minority of these people have been able to answer some questions appropriately.  Only in cases where I have strongly suspected malingering have the people being interviewed seemed unable to give even one appropriate answer."

In December 2004, the court held a competency trial.  Dr. Eiland confirmed his opinion that [West] was malingering.  With regard to [West's] competency, he testified, "I have insufficient reason to think he is unable to stand trial.  [¶]  I do have a strong

reason to think he has been feigning mental illness at times . . . .  [H]e may have some mental situation that is making it more difficult for him, but it's clear to me that there is a deliberate effort for him to appear sicker than he has ever been.  I think he wants to avoid going to trial."  Dr. Eiland thought that [West] was able to assist his attorney but was not sure that he would.  Dr. Carlton Purviance, who was also appointed to evaluate [West], similarly testified that [West] "does suffer from a mental illness, but . . . he is quite resourceful and is able to describe symptoms that would be consistent with an illness and exaggerates those and amplifies those . . . in a way to affect a certain outcome."  He explained that during the interview, "his presentation was one in which he was spontaneously offering material that was designed to convince me of a very serious mental illness and specifically that he wasn't competent to proceed."  The trial court found that [West] was competent to stand trial.

In April 2005, [West's] attorney again expressed a doubt as to [West's] competency to stand trial after [West] continued to refuse to cooperate or enter the courtroom.  He acknowledged, however, that the experts who examined [West] believed him to be malingering.  The court considered the extensive reports that had previously been submitted regarding [West's] competency as well as a recent report submitted in conjunction with [West's] insanity plea.  The court noted that [West] would not participate in the most recent evaluation and that the doctor believed [West] knows "'how to play the mental illness role'" and "wants to remain in control of the legal system."  The court noted that there had been "three findings of competency already; one by the doctors at Atascadero; one by Judge Foor; and one by me" and found there was no substantial change of circumstances or new evidence casting serious doubt on the earlier findings of competency.

Between April 2005 and January 2006, [West] refused to come into the court room, opting to view the proceedings from a holding cell that had a window into the courtroom.  As the date of the jury trial approached, [West's] conduct became more disruptive.  On January 30, 2006, [West] entered the courtroom but almost immediately became disruptive.  Among other things, he claimed to have seen the judge on television news talking about giving him the death penalty.  [West] was first placed in the holding cell, but after he began "knocking on the window . . . screaming things" he was removed from the courtroom entirely.

On February 3, 2006, [West] continued to rant from inside the holding cell and was again removed.  [West's] attorney then requested another competency evaluation.  He explained, "I received information from the correctional officers at the jail that earlier this week Mr. West made a suicide-well, perhaps a suicide attempt.  He was indicating to the jail staff he believed there was gas of some sort in his cell.  When they opened his cell he ran out of his cell and fashioned a sheet into a noose and ran down and then back up and wasn't able to use the noose in any fashion before the jail staff were able to get him back under control and back into his cell.  [¶]  Subsequent to that I learned from additional jail staff that Mr. West attempted to slit his wrists.  I saw him today and attempted to discuss this with him, and he did not discuss anything with me.  He was nonresponsive to all the questions, but I was able to observe on him that he was bandaged up the length of his arm and I could see there was blood on the bandages and blood at the

margin of where the bandage covered." The court rejected his argument that the suicide attempts constituted sufficient changed circumstances. The court explained, "This [c]ourt does have some historical knowledge of this case as it has progressed. I have been involved for about a year and a half now plus, and that includes evidentiary hearings on whether or not he was malingering when it was claimed he was incompetent to stand trial. [¶] The mental health professionals concluded he was malingering and I came to the same conclusion. It's my opinion that his behavior over the last week is just more of the same feigning mental incompetency for purposes of delaying the proceedings."

Due to calendaring conflicts, [West's] jury trial was continued until June 12, 2006. On May 22, [West] retained a new attorney. The trial was continued until November due to the production of new discovery.

On November 27, 2006, [West] withdrew his plea and pled no contest to one count of second degree murder with the personal use of a deadly weapon enhancement and one count of second degree robbery. He was informed that the maximum punishment was 16 years to life in prison. [West] received that sentence for the murder and a concurrent three-year term for the robbery. He filed a timely notice of appeal but did not request a certificate of probable cause.

*People v. West*, Nos. A117123, A119296, 2008 WL 3414687, at *1-3 (Cal. Ct. App. Aug. 12, 2008).

After West filed a notice of appeal, the Court of Appeal appointed appellate counsel, who argued that the trial court abused its discretion in failing to suspend the proceedings prior to the entry of West's plea to conduct a fourth competency hearing and that West received ineffective assistance of counsel in connection with the submission of the plea. The Court of Appeal's decision also indicates that West filed an accompanying petition for a writ of habeas corpus, but the petition is not in the record. The Court of Appeal affirmed West's judgment and denied the habeas petition in a reasoned, unpublished decision issued on August 12, 2008. *West*, 2008 WL 3414687, at *7. West sought review of the appellate court's decision, which was summarily denied on November 19, 2008.

-4-

The record indicates that West then filed another *pro se* habeas petition in the Court of Appeal, which is also not in the record.  That petition was denied without comment on September 3, 2009.

West then filed a *pro se* habeas petition in the California Supreme Court, arguing that appellate counsel was ineffective for failing to raise: 1) trial counsel's ineffectiveness with regard to his denied competency hearing; 2) trial counsel's misrepresentation of his plea agreement; 3) trial counsel's "p[er]jured testimony"; 4) prosecutorial misconduct; and 5) trial counsel's failure to recognize West's pre-sentence credits.  The Court of Appeal denied the petition with citation to *In re Clark*, 855 P.2d 729 (Cal. 1993), which reflects that it was untimely, on March 24, 2010.

While that *pro se* state habeas petition was pending, West timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court dated November 1, 2009.  *See* 28 U.S.C. § 2244(d)(1)(A); Docket No. 1.  He subsequently filed first and second amended petitions.  Docket Nos. 5, 25.  Respondent moved to dismiss West's second amended petition for failure to exhaust state remedies.  Docket No. 35.  West filed a motion seeking a stay and abeyance pending exhaustion in state court.  Docket No.

West then filed an additional *pro se* habeas petition in the California Supreme Court, in which he alleged that appellate counsel was ineffective for failing to raise trial counsel's misrepresentation of his request to withdraw his plea.  On May 18, 2011, the Supreme Court denied the petition with citations to *In re Robbins*, 959 P.2d 311 (Cal. 1998), and *Clark* for

untimeliness, as well as citations to *People v. Duvall*, 886 P.2d 1252 (Cal. 1995),[2] *In re Swain*, 209 P.2d 793, 796 (Cal. 1949),[3] and *In re Miller*, 112 P.2d 10 (Cal. 1941).[4]

On June 15, 2011, the Court denied as moot both the motion to dismiss and the motion for a stay, and ordered Respondent to answer the second amended petition.  Docket No. 58. West then moved for leave to file a third amended petition.  Docket No. 83.  The Court granted the request and ordered Respondent to answer the third amended petition.  Docket No. 88 ("Petition").  After Respondent answered, a previously-assigned magistrate judge appointed counsel for West in the interests of justice.  Docket No. 124.  Assigned counsel filed notice that West would rely on the third amended petition and also filed a counseled Traverse.  Briefing is now complete and the matter has been transferred to the undersigned judge for adjudication.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, West argues that: 1) his plea was involuntarily induced by an illusory plea bargain; 2) the trial court failed to conduct an inquiry to determine whether there was a factual basis for his no contest plea; 3) the trial court abused its discretion and violated West's due process by not ordering a fourth competency evaluation; 4) structural error resulted from "the manner[] in which the trial court induced [him] to waive his right to a

---

[2]    *Duvall* asserts the requirement that documentary evidence must be provided and stands for the additional proposition that facts be stated fully and with particularity.  886 P.2d at 1258 (stating that habeas petitions "should both (i) state fully and with particularity the facts on which relief is sought as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations" (citations omitted)).

[3]    *In re Swain* stands for the rule that a California habeas petition must state "with particularity the facts" upon which relief is sought.  209 P.2d at 796.

[4]    A citation to *Miller* "signals that the Court is denying the petition for the same reasons that it denied the previous one."  *Kim v. Villalobos*, 799 F.2d 1317, 1319 (9th Cir. 1986).

jury trial;" 5) trial counsel was ineffective with regard to the entry of his no contest plea; 6) the

trial court failed to record the entirety of the trial proceedings; 7) the prosecutor committed

misconduct by suppressing material evidence of his lack of capacity and that a conservator had

been appointed; 8) trial counsel was ineffective at sentencing for "misrepresentations" regarding

West's request to withdraw his plea; 9) the trial court abused its discretion by denying his

request for good time custody credits; and 10) trial counsel was ineffective for failing to seek a

certificate of probable cause.

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives

at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1)

"refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where

holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.   <u>Procedural Bar</u>

Respondent argues that the vast majority of claims raised in West's Petition are procedurally barred because the California Supreme Court, considering these claims on state habeas review, found the claims barred under two separate state procedural theories: (1) untimeliness (*Robbins/Clark*); 2) failure to state with reasonable particularity or support with reasonably available documentary evidence (*Swain/Duvall*).

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims." *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992). "The state-law claim may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011). Procedural default does not preclude federal habeas review unless the last state court rendering judgment in a case "clearly and expressly" states that its judgment rests on a state procedural bar. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989) (quoting *Harris v. Reed*, 489 U.S. 255, 262-63 (1989)). "In order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well established at the time of the petitioner's purported default." *Morales v. Calderon*, 85 F.3d 1387, 1393 (9th Cir. 1996) (internal quotation marks and citation omitted).

Respondent claims that all of West's claims, with the exception of Ground 3 (denial of

fourth competency hearing), are procedurally barred due to the California Supreme Court's state

habeas decision.  This Court therefore must address whether the procedural grounds relied upon

by the California Supreme Court on habeas review constituted adequate and independent

grounds precluding federal habeas review of those claims here.

If a petition is dismissed for failure to state the facts with particularity—that is, with a

cite to *Swain*—the petitioner may file a new petition curing the defect.  *See Gaston v. Palmer*,

417 F.3d 1030, 1037 (9th Cir. 2005); *see Kim*, 799 F.2d at 1319.  There is no reason the result

should be any different when the defect in the state petition is the failure to attach documentary

evidence.  Neither the failure to attach documentary evidence nor the failure to plead with

particularity are irremediable errors.  It therefore appears that the California courts would have

allowed West to file a new state petition remedying these defects.  Accordingly, the

*Swain/Duvall* bar did not cause these claims to be procedurally defaulted in state court and thus

this bar does not cause them to be procedurally defaulted in federal court either.  *See Cross v.*

*Sisto*, 676 F.3d 1172, 1177 (9th Cir. 2012) (California state court's denial of petitioner's habeas

petition with citation to *Swain* constituted dismissal without prejudice and with leave to amend

to plead required facts with particularity and thus did not signify that petitioner's claims were

procedurally barred as a matter of state law).

However, the Supreme Court also denied West's state habeas petition with citations to

*Robbins*, 959 P.2d at 311, and *Clark*, 855 P.2d at 729, which reflects that West's state habeas

petition was denied because it was deemed untimely, *Walker*, 131 S. Ct. at 1126.  The Ninth

Circuit has held that California's "substantial delay" timeliness standard satisfies the

"independent and adequate" requirement.  *See Bennett*, 322 F.3d at 582-83; *see also Walker*, 131

S. Ct. at 1131 (finding that California's timeliness standard is adequate).  The Ninth Circuit has

further stated:

> If a petitioner has procedurally defaulted on a claim, a federal court may
> nonetheless consider the claim if he shows: (1) good cause for his failure to exhaust the
> claim; and (2) prejudice from the purported constitutional violation; or (3) demonstrates
> that not hearing the claim would result in a "fundamental miscarriage of justice."
> *Coleman*, 501 U.S. at 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640; *Sawyer v. Whitley*, 505
> U.S. 333, 339-40, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (1992).  An objective factor outside
> of a petitioner's control (*e.g.*, ineffective assistance of counsel or a basis for the claim
> that was previously unavailable) could constitute cause.  *Murray v. Carrier*, 477 U.S.
> 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); *McCleskey v. Zant*, 499 U.S. 467,
> 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).  The petitioner can meet the prejudice
> prong if he demonstrates "that the errors . . . worked to his *actual* and substantial
> disadvantage, infecting his entire [proceeding] with errors of constitutional dimension."
> *White v. Lewis*, 874 F.2d 599, 603 (9th Cir.1989) (citing *United States v. Frady*, 456 U.S.
> 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)).  A petitioner can demonstrate a
> fundamental miscarriage of justice by "establish[ing] that under the probative evidence
> he has a colorable claim of factual innocence."  *Sawyer*, 505 U.S. at 339, 112 S. Ct. 2514,
> 120 L. Ed. 2d 269 (quotation marks omitted).

*Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011).

In his Traverse, West argues that the claims are not procedurally defaulted because that

procedural bar was "imposed when petitioner attempted to *re-adjudicate* the claims."  But

because not all of West's state habeas petitions are included in the record, it appears difficult to

fully consider West's argument in response.  Moreover, as discussed below, the allegedly-barred

claims may be more easily resolved on the merits.  Accordingly, the Court declines to decide

those claims on procedural grounds and will address the merits of all West's claims, as discussed

below.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (in the interest of judicial economy,

the court may address a petition's merits without reaching procedural issues); *Van Buskirk v.

Baldwin*, 265 F.3d 1080, 1083 (9th Cir. 2001) (declining "to reach the complex questions lurking

in the time bar of the AEDPA" where the district court "decided the case on the merits, and on the merits it was right as a matter of law").

B.    Merits

**Grounds 1, 4.**          *Involuntary Plea/Structural Error*

West first argues that his plea was involuntarily made because it was based on an "illusory and meaningless 'benefit.'"  He relatedly claims in Ground 4 that the trial court's acceptance of his involuntary plea constituted structural error.

It is a settled principle of federal constitutional law that a guilty plea violates due process and is therefore invalid if not entered voluntarily and intelligently.  *Brady v. United States*, 397 U.S.  742, 747 (1970).  A plea of guilty is considered voluntary and intelligent if the defendant enters the plea with full awareness of its "direct consequences."  *Id.* at 755.  A plea may be not knowing and voluntary if it is, for instance, the product of "ignorance, incomprehension, coercion, terror, inducements, or subtle or blatant threats[.]"  *Custis v. United States*, 511 U.S. 485, 508 (1994) (internal quotation marks, citation and brackets omitted).  However, "a plea's validity may not be collaterally attacked merely because the defendant made what turned out, in retrospect, to be a poor deal."  *Bradshaw v. Stumpf*, 545 U.S. 175, 186 (2005).

The Court of Appeal considered and rejected West's claim on direct appeal as follows:

> [West] pled no contest to second degree murder and admitted that he used a deadly weapon during the commission of the crime.  Prior to taking his plea, the court confirmed that his lawyer "went over [the] waiver of rights form" with him and that he understood the rights he was waiving.  [West] stated that he understood his rights and also understood that he was giving up those rights by pleading no contest.  The waiver form states with regard to his postconviction placement, "Being fully aware that placement in CDC will be up to CDC alone, the court and DA suggests that due to mental condition Atascadero considered."  Following the entry of his plea, the court advised that it would "refer this matter to [p]robation for their report and recommendation with the understanding that they're going to look into placement in either a mental health setting

-12-

or [Atascadero]"  The prosecutor added, "That's Department of Corrections' decision. What I will do, and I told [defense counsel] that, . . . in the statement of [views] that I will write, which will detail the facts of the case, et cetera, I think it's appropriate, given the mental health history in this case, that he be evaluated, and we'd have Department of Corrections determine whether it's appropriate to house him at Atascadero, Department of Corrections with mental health treatment or somewhere else."

[West] contends that the promises made by the prosecutor and the court to "recommend" or "investigate" placement at Atascadero were illusory and that his attorney was ineffective in failing to so advise him.  He argues that under section 2684 and California Code of Regulations, title 15, section 3360, the decision to place an inmate at a state mental hospital is vested in the sole discretion of the Department of Corrections and that a recommendation by the prosecutor or judge "carrie[s] no weight."  He also argues that the bargain was illusory because any placement at a state mental hospital is temporary at best.

Section 2684 provides "(a) If, in the opinion of the Director of Corrections, the rehabilitation of any mentally ill, mentally deficient, or insane person confined in a state prison may be expedited by treatment at any one of the state hospitals under the jurisdiction of the State Department of Mental Health or the State Department of Developmental Services, the Director of Corrections . . . shall certify that fact to the director of the appropriate department who shall evaluate the prisoner to determine if he or she would benefit from care and treatment in a state hospital.  If the director of the appropriate department so determines, the superintendent of the hospital shall receive the prisoner and keep him or her until in the opinion of the superintendent the person has been treated to the extent that he or she will not benefit from further care and treatment in the state hospital.  [¶]  (b)  Whenever the Director of Corrections receives a recommendation from the court that a defendant convicted of a violation of Section 646.9 [Stalking] and sentenced to confinement in the state prison would benefit from treatment in a state hospital pursuant to subdivision (a), the director shall consider the recommendation.  If appropriate, the director shall certify that the rehabilitation of the defendant may be expedited by treatment in a state hospital and subdivision (a) shall apply."  California Code of Regulations, title 15, section 3360, subdivision (b) provides, "When an inmate is found to require mental health care not available within the[ ] resources [of the Department of Corrections], but which is available in the Department of Mental Health, the case will be referred to the director for consideration of temporary transfer to that department pursuant to . . . section 2684."

[West] is correct that the final decision regarding placement rests with the Department of Corrections.  However, [West] was fully advised of this fact prior to entering his plea.  Contrary to [West's] argument, the court and the prosecutor did not promise to recommend placement at Atascadero.  Rather, they promised to recommend to the Department of Corrections that it consider such a placement.  The prosecutor fulfilled this promise by including in his statement of views that "it is the position of the People that the Department of Corrections and Rehabilitation should conduct a thorough and careful examination of Mr. West in order to determine the proper housing and treatment, if any, for [West].  It is the position of the People that all options for housing, including

-13-

but not limited to [Atascadero] . . . and various other prison facilities be explored, taking into account all appropriate security concerns."[FN3]  Nothing in the provisions cited by [West] suggest that the prosecutor's recommendation for evaluation carries no weight with the Department of Corrections.  Finally, the fact that placement is only "temporary," in that it can last only "until . . . the person has been treated to the extent that he or she will not benefit from further care and treatment in the state hospital," does not render the plea bargain illusory.  That [West] would not receive a permanent placement in a state mental hospital irrespective of his continued need for mental health treatment does not remove meaningful content from a promise to recommend consideration for hospitalization for so long as [West] would benefit from treatment.[FN4]

> FN3.   Section 1203.01 authorizes the district attorney to file "a brief statement of [his or her] views respecting the person convicted or sentenced and the crime committed," which is delivered to the Department of Corrections at the prison or other institution to which the person convicted is delivered.

> FN4.   [West] suggests that he "was rushed to make a decision without the usual benefit of a discussion with his conservator/father."  His declaration, however, does not support this claim.  [West] writes that prior to the hearing, "I asked to see my father/conservator but Mr. Spieckerman told me he was not present."  Later he adds, "When I got into court, I was surprised to see my conservator/father sitting in the back because I was told he was not present."  There is no suggestion in the declaration that [West] renewed his request to confer with his father or that such a request would have been futile.

*West*, 2008 WL 3414687, at *5-6.

The Court of Appeal's determination is both reasonable and fully supported by the record.  A review of the record demonstrates that West's plea was both knowing and voluntary.[5]

Apart from his bald statement that his plea was involuntarily made in exchange for an illusory benefit, West provides no facts indicating that his plea was the result of any threats, improper

---

[5]     West does not argue in his Petition that his plea was involuntary due to mental impairment.  In any event, his change of plea form, executed under penalty of perjury, indicates that he was "of sound mind" and "underst[oo]d the nature of the[] proceedings."  "Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (citing *Machibroda v. United States*, 368 U.S. 487, 495-96 (1962)).

-14-

promises, or any type of coercion.  As the Court of Appeal explained, West's no contest plea did not include a guarantee that he would be placed in the mental facility of his choice.

Moreover, West fails to acknowledge the meaningful consideration he received for his plea.  The plea agreement called for him to plead no contest to second degree murder with the personal use of a deadly weapon enhancement and one count of second degree robbery, in exchange for a sentence of 16 years to life imprisonment.  If West had gone to trial and was convicted of first degree premeditated deliberate murder, he would have been exposed to a potential sentence of life without the possibility of parole, or even death.  CAL. PENAL CODE § 190(a) ("Every person guilty of murder in the first degree shall be punished by death, imprisonment in the state prison for life without the possibility of parole, or imprisonment in the state prison for a term of 25 years to life.).

West was faced with the choice of going to trial with strong evidence against him, as described in greater detail with respect to Ground 2, *infra*, or pleading guilty in the hope of receiving a reduced sentence.  Based on these facts, it was reasonable to conclude that the plea was a voluntary and intelligent choice among the alternatives available to him.  Nothing in the record suggests that the plea was the result of any improper promises.  West cannot now challenge the validity of his plea because he was not granted a spot in a mental health facility within the state prison system.  And because it was not error to accept the no contest plea, there necessarily was no structural error either.  Under these circumstances, the state court's decision neither contravened nor unreasonably applied federal law, and federal habeas relief is not warranted on either of these grounds.

**Ground 2.**             *Failure to Present a Factual Basis for Plea*

West next contends that the trial court erred in accepting in his no contest plea because it

was unsupported by a factual basis.  The Court of Appeal considered and rejected this claim on

direct appeal as follows:

> [West] also contends the trial court failed to conduct the required inquiry to
> determine whether there was a factual basis for his plea.  He acknowledges that the
> waiver form he signed states that "[t]he facts upon which this change of plea are based
> are: [¶] those contained in the preliminary transcript" but suggests that this conclusory
> statement did not establish a factual basis for the plea.  Notably, [West] does not suggest
> that the facts contained in the preliminary hearing transcript do not support the plea.
> 
> "Pursuant to section 1192.5, the trial court is obligated to determine whether there
> is a factual basis for a plea of guilty or no contest when that plea arises from a negotiated
> resolution of the charges."  (*People v. Marlin* (2004) 124 Cal. App. 4th 559, 571.)
> "Although section 1192.5 requires the trial court to satisfy itself there is a factual basis
> for the plea, this can be done by having the defendant describe the conduct or answer
> questions, by detailing a factual basis, or by having defense counsel stipulate to a
> particular document such as the transcript of a preliminary hearing as providing a factual
> basis for a plea.  [Citation.]  The trial court need not obtain an element-by-element
> factual basis but need only obtain a prima facie factual basis for the plea.  [Citations.]
> '[A] trial court possesses wide discretion in determining whether a sufficient factual basis
> exists for a guilty plea.  The trial court's acceptance of the guilty plea, after pursuing an
> inquiry to satisfy itself that there is a factual basis for the plea, will be reversed only for
> abuse of discretion.'"  (*Id*. at pp. 571-572, quoting *People v. Holmes* (2004) 32 Cal. 4th
> 432, 443.)
> 
> In *People v. Wilkerson* (1992) 6 Cal. App. 4th 1571, 1577, the court rejected an
> argument similar to [West's] in holding that the court's reliance on a stipulation that the
> factual basis was contained in the police reports, without further inquiry, was sufficient.
> The court explained, "The stipulation entered by the parties below was not generalized
> but referred the municipal court, and us, to a particular source of information, namely,
> police reports.  In this respect this case resembles *People v. Enright* (1982) 132 Cal. App.
> 3d 631 . . . .  The *Enright* court found no error when the parties stipulated the police
> reports could be considered as the factual basis for a guilty plea, even though the record
> did not affirmatively show that the reports were specifically considered by the court.
> [Citation.]  Although we would prefer that the court expressly refer to the specific facts
> which it finds sufficiently support the plea, we will not find error simply from the failure
> to do so, as long as adequate information was before the court and is reflected in the
> record."  (*People v. Wilkerson*, *supra*, 6 Cal. App. 4th at p. 1577.)  Likewise, in this case
> the trial court did not abuse its discretion by relying on the stipulation that the
> preliminary hearing transcript provided a factual basis for [West's] plea.

*West*, 2008 WL 3414687, at \*6-7.

As the appellate court noted, under California law, a state court that accepts a guilty plea must satisfy itself that there is a factual basis for the plea.[6]  CAL. PENAL CODE § 1192.5; *People v. Holmes*, 84 P.3d 366, 368 (Cal. 2004).  This state law requirement, however, is not a federal constitutional requirement.  The due process clause does not impose on a state court the duty to establish a factual basis for a guilty plea absent special circumstances, such as "a defendant's specific protestation of innocence."  *Rodriguez v. Ricketts*, 777 F.2d 527, 528 (9th Cir. 1985); *see also Loftis v. Almager*, 704 F.3d 645, 648 (9th Cir. 2012) (plurality opinion) ("habeas courts have held that, unless a plea is accompanied by protestations of innocence or other 'special circumstances,' the Constitution does not require state judges to find a factual basis").  Thus, a state trial court's "failure to find a factual basis for [a] no contest plea—unaccompanied by protestations of innocence—does not present a constitutional issue cognizable under 28 U.S.C. § 2254."  *Loftis*, 704 F.3d at 648.

Here, however, West's no contest plea was not "unaccompanied by protestations of innocence."  *Loftis*, 704 F.3d at 648.  Although West pleaded no contest to second-degree murder and robbery and admitted the enhancement for the use of a screwdriver in the murder count, defense counsel specifically declared the plea to be an Alford plea,[7] with citation to *People v. West*.[8]  An Alford plea is "shorthand for a guilty plea accompanied by a protestation of innocence."  *United States v. Mancinas-Flores*, 588 F.3d 677, 681 (9th Cir. 2009). In *Alford*, the

---

[6]     A *nolo contendere* (no contest) plea is equivalent to a guilty plea under California law.  CAL. PENAL CODE § 1016(3).

[7]     *No. Carolina v. Alford*, 400 U.S. 25 (1970).

[8]     477 P.2d 409 (Cal. 1970) (the California equivalent to *Alford*).

-17-

Supreme Court held that the trial court did not commit constitutional error by accepting a guilty

plea by a defendant who professed his innocence "in view of the strong factual basis for the

plea." *Alford*, 400 U.S. at 38.

It is unnecessary to determine whether, under the specific factual circumstances of this

case, a factual basis for West's no contest plea was constitutionally required. *See Loftis*, 704

F.3d at 650-52 (when defendant did not claim innocence, his no contest plea was not an Alford

plea and a factual basis for the plea was not required). Assuming that a factual basis was

required, the Court finds that the Court of Appeal reasonably determined that the requirement

was met. In West's case, the prosecutor and defense counsel stipulated that the evidence

adduced at the preliminary hearing stated a factual basis for the charges if the judge read the

transcript of that hearing. Such a stipulation satisfies the California state law requirement,

embodied in California Penal Code § 1192.5, that a trial judge accepting a guilty plea garner

information regarding the factual basis of the plea. *See Holmes*, 9 Cal. Rptr. 3d at 368 (noting

that the requirement is satisfied if defense counsel points to a particular document that provides

an adequate factual basis for the plea, such as the preliminary hearing transcript).

The preliminary hearing transcript, which was unquestionably part of the record and is included

in its entirety in the record before this Court, established a sufficient factual basis for West's

pleas. The evidence at the hearing, as summarized by the probation officer in preparing West's

pre-sentence report, established that:

> Through investigation, police were able to link [West] to two separate incidents
> that occurred in the cities of Fairfield and Vacaville within several days from April 16,
> 1999 to April 19, 1999. The incidents entailed the robbery and stabbing of victim T.A.
> (count 2) at the Shell Food Mart in Fairfield and the murder of K.O. (count 1).
> On April 16, 1999 at about 11:52 p.m. police were dispatched to the report of a
> robbery that had just occurred. Upon arrival at the scene, police spoke with victim T.A.

who reported that a subject, later identified as [West], came to the night service window and requested the key to the bathroom.  When [West] returned to the window, he told the victim that the had locked the bathroom key and his wallet in the bathroom.  When the victim opened the door with the intention of going out to the bathroom to unlock the door, [West] yanked the door open and entered the store.  The victim reported that [West] had a sharpened screwdriver in his right hand and began making underhand jabbing movements at him, stabbing him in the left rib cage area and left triceps with the tip of the screwdriver.  [West] began shouting and demanding to know where the money was and mentioned something to the effect that he not press any buttons.  The victim then went to the register and took $550 dollars in cash.  He then ran out of the store towards the Green Valley Ford dealership, where he got into a blue 80's model Volvo that fled northbound on Oliver Road.

Police noted that the victim T.A. appeared to be very shaken and that his hands were shaking.  He told police that he had been afraid for his life when he realized that he had been stabbed.  Regarding the weapon, the victim described it as a screwdriver with a Phillips head that had been ground to a fine point with a metal portion of about four to five inches in length.

Subsequently, on April 19, 1999 at about 10:30 a.m. police responded to the area of Cherry Glenn road in Vacaville on the report of a dead body being found by a farm worker.  The female victim was later identified as K.O.  According to the autopsy report, the victim died of multiple stab injuries to her head, neck, and chest.  Injuries included a broken mandible, multiple stab wounds (30+) and abrasions to her arms and legs consistent with defensive type injuries.  It was reported that the stab wounds were from an instrument that was not consistent with a knife, but rather some type of pointed instrument.  Additionally, it was believed that the victim had been killed 6 to 8 hours prior to being found.

On April 20, 1999, police found the blue Volvo in the parking lot of an apartment complex near [West's] family's residence.  Although it appeared that the Volvo had been wiped clean, police were able to find large amounts of blood in the rear seat, front seat headliner and rear door panel.  Additionally, the windows were smeared with some white residue, possibly from some type of cleaner.  Police located a Phillips screwdriver with the point sharpened stuffed in the passenger's front seat, and it appeared to have blood on the handle.

Subsequently, a female friend of victim K.O., told police that she, K.O. and [West] had been together the night of the robbery, and that she and K.O. had been present at the Shell station when [West] robbed it.  She related that K.O. and [West] had smoked crack cocaine earlier that evening at Rockville Park.  On their way back they stopped at the gas station since [West] told them that he wanted to use the bathroom.  Subsequently, he came running back to the car, got in and laid down in the back and told them to take off.  He later pulled out a wad off money and showed it to them.

During investigation, and after talking with family members and acquaintances of [West] and victim who saw them together, police were able to piece together the events of that weekend that led to the victim's murder.  It appears that the victim had at some point stolen a ring from her father and she had given it to [West] so he could sell it for

-19-

money and cocaine.  Apparently, when she didn't get any money or drugs from [West], she tried to get it back from [West], but wasn't able to.  According to reports, she then called [West's] mother and talked badly about him to her.  [West] then learned about the phone call and got upset.  Additionally, a witness came forward and told police that when he saw the picture of [West] in the newspaper, he recognized him as the person he had seen at a gas station on the intersection of East Travis and Sunset in Fairfield on the evening of April 17, 1999 at about 10:30 p.m.  He reported that he saw a blue Volvo pull up to the pumps, and he recognized [West] in the car.  Although he didn't know [West's] name, he had seen him several times around the Stoneybrook apartments and at the park across the street.  He advised that he also saw two other people in the car.  [West] had then walked up to him and had asked him for .35 cents.  He told police that [West] was twitching and acting weird.  [West] told him that he was going to kill the girl in the Volvo because she had his mother set up.  They thought [West] was drugged up and for that reason was making those kinds of statements.  He didn't think more of it, until he saw [West's] picture in the paper.

Another witness told police that he had seen [West], the victim and another black male the night before [West's] arrest sometime between 10 p.m. and 1:00 a.m.  [West] and the black male had sold a ring to a "Moe" and [West] had asked if his girlfriend could come up since she was in the car.  A short time later, all three left the apartment.  Subsequently, [West] returned by himself driving the Volvo.  He then got a ride from [West] and went to pick up a female friend.  He told police that when his friend tried to get into the back seat, [West] went crazy, yelling at him to sit in the back and to have his female friend sit in front.  He told police that the back seat was full of clothes and that upon getting into the back seat, he felt like he was sitting on something other than clothes, but couldn't describe it.  However, during the ride he then noticed blood on the passenger's side windows and the ceiling of the car.  He then shouted to [West] that he wanted to get out of the car, and soon thereafter, he and his female friend got out of the car.

On April 20, 1999 at about 8:15 p.m. police received information that [West] had returned to his family's residence on Mallard Court.  [West] was arrested and taken to the Sheriff's Department.  In a statement to police, [West] reported that he couldn't remember the times that he had been with the victim that evening.  He advised that he had dropped her off on Tabor Avenue, and when he went back to pick her up, she wasn't there so he kept the car and drove around for awhile.  When he was confronted with the blood that was found in the car, he denied seeing any blood in the car.  He reported that he lent the car to some guy that gave him some crack cocaine and some money to use the car.  While speaking with [West], investigators noticed that he had some cuts on his right hand.  When asked about it, [West] reported that he had gotten the cuts from playing with a glass pipe.  [West] then refused to answer any more questions and requested a lawyer.

Police noted that the pathologist that had conducted the autopsy of the victim looked at [West's] injuries and concluded that they were no more than a week old.  Also, police took fingernail clippings from [West] and his clothing was collected.  A short time later, police were advised that blood had been found underneath his fingernails, on his

clothing, his shirt, pants, and shoes.  Additionally, a print that had been lifted from the Volvo was found to match [West's] prints.

Witnesses testified at the preliminary hearing and were subject to cross-examination. The evidence they provided was more than sufficient to provide a factual basis for West's no contest plea.  Accordingly, the state court's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law, nor did it rest on an unreasonable determination of the facts in light of the evidence.  Ground Three does not warrant federal habeas relief.

**Ground 3.**               *Denial of Fourth Competency Hearing*

West additionally claims that the trial court violated his constitutional rights by failing to suspend the criminal proceedings and conduct a fourth competency hearing prior to accepting his no contest plea.  The Court of Appeal rejected this claim on direct appeal:

> [West] contends the trial court abused its discretion and violated his constitutional rights by refusing to suspend the proceedings a fourth time for another competency evaluation.[FN2]  [West] argues that when his behavior began deteriorating in February 2006, as evidenced by his outbursts in the courtroom and alleged suicide attempts, the court should have suspended the proceedings and ordered another competency evaluation.  Based on the record, however, we cannot conclude that the trial judge, who presided over the prior evidentiary hearing on [West] competency, abused his discretion in finding that [West] behavior was a calculated attempt to delay the proceedings.

> FN2.   The Attorney General contends that this argument is not cognizable on appeal because [West] pled no contest to the charges and did not obtain a certificate of probable cause.  [West's] petition for habeas corpus, however, alleges that he received ineffective assistance of counsel in part because his attorney failed to request a certificate of probable cause.  We deem it most expedient to consider [West's] arguments on the merits.

> Relying on *United States v. Loyola-Domingues* (9th Cir. 1997) 125 F.3d 1315, [West] argues that his suicide attempts "constituted changed circumstances warranting additional judicial reflection."  In that case, the court observed that "[a]n attempted suicide is an extremely serious action" and found that under the circumstances of that case, the suicide attempt gave rise to a doubt as to the [West's] sanity.  (*Id.* at pp.

1318-1319.)  The court noted, however, "we do not believe that every suicide attempt inevitably creates a doubt concerning defendant's competency."  (*Ibid.*; *see also People v. Ramos*, *supra*, 34 Cal. 4th at p. 509 ["defendant's preference for the death penalty and overall death wish does not alone amount to substantial evidence of incompetence or evidence requiring the court to order an independent psychiatric evaluation"].)  Here, it is questionable whether the behavior described by [West's] attorney can be considered a serious suicide attempt.  In any event, the trial court was entitled to measure the severity and authenticity of [West's] suicide attempts and other courtroom behavior in light of his experience with [West] and [West's] prior psychiatric evaluations.

   [West] also contends that the court abused its discretion by failing to explore previously unassessed psychological features involving an organic brain injury and mental retardation.  [West] has failed to establish, however, that further exploration of these issues was necessary or even properly requested.  The psychiatric evidence dating back to 2001 repeatedly references a diagnosis of schizophrenia, a potential organic brain injury stemming from an accident when [West] was 10 years old, and the likelihood that [West] is moderately mentally retarded.  V.L. Sternitzke, one of the psychologists appointed to examine [West] in 2001, indicated that he had conducted a full range picture vocabulary test to assess [West's] intellectual functioning and concluded on the basis of those test results that [West] had the mental age of 5.75 years, putting him below the "use of reason" level.  The experts who subsequently examined [West] testified that they considered Sternitzke's findings in evaluating [West's] competency and concluded that he nonetheless was competent to stand trial.  The court agreed.  Although the trial court did not appoint the director of the regional center for the developmentally disabled to examine defendant following Sternitzke's 2001 report that [West] was mentally retarded, as it was required to do by section 1369, subdivision (a), no harm resulted.  [West's] mental retardation was tested and evaluated by Sternitzke and considered by the other experts and by the court in determining his competence to stand trial.  He received a "comprehensive, individualized examination" performed by an appropriate expert consistent with the purpose of section 1369.  (*See People v. Leonard* (2007) 40 Cal. 4th 1370, 1389-1390 [failure to appoint regional director to evaluate defendant was harmless where "the trial court's competency determination was based on evidence from experts who were familiar with defendant's developmental disability and who considered it in evaluating his competence"].)  Putting aside [West's] failure to request further tests for a possible brain injury or mental retardation, he has made no showing that additional evaluation was either necessary or could reasonably have been expected to affect the conclusions that were reached concerning his competency to stand trial.

*West*, 2008 WL 3414687, at *3-4.

   It is undisputed that "the conviction of an accused person while he is legally incompetent

violates due process."  *Pate v. Robinson*, 383 U.S. 375, 378 (1966).  "To be competent to stand

trial, a defendant must have the 'capacity to understand the nature and object of the proceedings

against him, to consult with counsel, and to assist in preparing his defense.'"[9]  *Maxwell v. Roe*,

606 F.3d 561, 568 (9th Cir. 2010) (quoting *Drope v. Missouri*, 420 U.S. 162, 171 (1975)).

Where there is a "bona fide doubt" as to a defendant's competence to stand trial, a court has a

duty to hold a *sua sponte* competency hearing.[10]  *Pate*, 383 U.S. at 385-86.  The test for a bona

fide doubt is "whether a reasonable judge, situated as was the trial court judge whose failure to

conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to

competency to stand trial."  *Maxwell*, 606 F.3d at 568 (citation omitted).  "Evidence of a

defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on

---

[9]       While at one time the Ninth Circuit adhered to the view that the competency standard for pleading guilty is higher than the competency standard for standing trial, the Supreme Court overruled the Ninth Circuit's heightened standard and held that the competency standard for pleading guilty is the same as the competency standard for standing trial.  *Godinez v. Moran*, 509 U.S. 389, 397 (1993).

[10]      There are two types of competency claims: (i) procedural due process claims, which arise where a state court failed to hold a competency hearing when there was a "bona fide doubt" about the petitioner's competence, and (ii) substantive due process claims, where a petitioner was tried and convicted or sentenced while he or she was actually incompetent.  *See, e.g.*, *Boyde v. Brown*, 404 F.3d 1159, 1165 n.6 (9th Cir. 2005), amended on other grounds, 421 F.3d 1154 (9th Cir. 2005) (distinguishing petitioner's "substantive" due process claim from a "procedural" due process claim); *Williams v. Woodford*, 384 F.3d 567, 603-10 (9th Cir. 2004); *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2003).
The importance of distinguishing between procedural and substantive due process competency claims pertains to the evidence that a habeas court may consider in reviewing the claim.  When reviewing a procedural due process competency claim, a habeas court may only review the evidence that was before the trial judge.  *United States v. Lewis*, 991 F.2d 524, 527 (9th Cir. 1993); *see also Williams*, 384 F.3d at 604.  In contrast, when reviewing a substantive due process competency claim, a federal habeas court may consider new evidence, although retrospective competency determinations are discouraged.  *Williams*, 384 F.3d at 608 (explaining that, while the court may consider facts and evidence not available to the state trial court in reviewing a substantive due process competency claim, retrospective determinations of incompetence are disfavored and considerable weight is given to lack of contemporaneous evidence of a petitioner's incompetence to stand trial); *see also Boag v. Raines*, 769 F.2d 1341, 1343 (9th Cir. 1985).  Because West solely asserts a procedural due process claim here, this Court may consider only the evidence that was before the trial judge.

competence to stand trial are all relevant in determining whether further inquiry is required, and

one of these factors standing alone may, in some circumstances, be sufficient." *Id.* (quoting

*Drope*, 420 U.S. at 180 (internal quotation marks and brackets omitted)).  A state court's finding

that no competency hearing is required is a factual determination entitled to deference unless it is

objectively unreasonable.  *See Mendez v. Knowles*, 556 F.3d 757, 771 (9th Cir. 2009); *Davis*,

384 F.3d at 644.

The record reflects that defense counsel made the following statements regarding his

doubts about West's competence:

> I received information from the correctional officers at the jail that earlier this
> week Mr. West made a suicide—well, perhaps a suicide attempt.  He was indicating to
> the jail staff he believed there was gas of some sort in his cell.  When they opened his cell
> he ran out of his cell and fashioned a sheet into a noose and ran down and then back up
> and wasn't able to use the noose in any fashion before the jail staff were able to get him
> back under control and back into his cell.
> 
> Subsequent to that I learned from additional jail staff that Mr. West attempted to
> slit his wrists.  I saw him today and attempted to discuss this with him, and he did not
> discuss anything with me.  He was nonresponsive to all the questions, but I was able to
> observe on him that he was bandaged up the length of his arm and I could see there was
> blood on the bandages and blood at the margin of where the bandage was covered.
> 
> Obviously, Your Honor, there has been a history of 1368 requests by the defense
> in this case, and this will be the first such one raised by me[.] . . . Mr. West has exhibited
> behavior . . . in the past[] while I have been his attorney that in many other cases might
> be cause for me to request a 1368 motion, but based on my review of past such motions
> and doctor's evaluations I felt it was essentially more of the same and not a change in
> circumstances warranting additional evaluations[.]  [B]ut my review of those prior
> evaluations indicate that none of them addressed suicide attempts.  And now this week it
> appears we have two suicide attempts, although, both were ineffectual and Mr. West,
> although—well, although Mr. West's demeanor towards me is that in fact he will not
> communicate with me at all, that is something new that has just occurred today, and
> based upon those two—those factors I have elicited here, Your Honor, I would express a
> doubt as to his competence.

The trial court declined to suspend the criminal proceedings, finding as follows:

> This Court does have some historical knowledge of this case as it has progressed.
> I have been involved for about a year and a half now plus, and that includes evidentiary

hearings on whether or not he was malingering when it was claimed he was incompetent to stand trial.

The mental health professionals concluded he was malingering and I came to the same conclusion.  It's my opinion that his behavior over the last week is just more of the same feigning mental incompetency for purposes of delaying the proceedings.

I do not find anything of substance has changed, other than implementing Plan B and C to try and delay his trial.  So I conclude that, notwithstanding counsel's good-faith statement that you have a doubt as to his competency, given all things, there is an insufficient change of circumstances from when this Court last concluded he was competent to stand trial to justify suspending criminal proceedings.

So the request to have the criminal proceedings suspended pursuant to Penal Code Section 1368 is denied for the reasons stated.

While it certainly gives this Court pause that the trial court relied solely on defense counsel's description of the suicide attempts and West's recent behavior to determine that no competency hearing was required, under the circumstances of this case, the Court cannot find that determination unreasonable.  The record reflects that the trial judge, who was well aware of the case and had previously determined that the petitioner was competent and attempting to delay trial, considered trial counsel's argument and determined that the attempted suicides were insufficient to warrant a fourth competency evaluation.  The trial court was in a far better position to assess the petitioner's competency, credibility, honesty, and motivation.  *Cf. Ornelas v. United States*, 517 U.S. 690, 701 (1996) (noting that an appellate court never has the benefit of the trial court's familiarity with the details of the case, nor the benefit of hearing live testimony). As the Court of Appeal reasonably concluded, "the trial court was entitled to measure the severity and authenticity of [West's] suicide attempts and other courtroom behavior in light of his experience with [West] and [West's] prior psychiatric evaluations."  *West*, 2008 WL 3414687, at *3.

Moreover, the record is well-developed regarding West's mental history.  The record indicates that he was first diagnosed with schizophrenia while he was incarcerated at the

-25-

Martinez Detention Facility in 1994.  The record likewise includes psychological evaluations both from mental health professionals who opined that West was mentally incompetent as well as those who opined that he was competent.  Importantly, the record also includes a transcript of the 2004 competency evidentiary hearing where two mental health professionals, who had each met with West a number of times since 1999, testified under oath and subject to cross-examination that West was competent and was exaggerating his symptoms in a deliberate effort to mislead the court.  Both experts were asked about any head injuries or possible brain damage and both indicated that they had sufficient information to discount any impact of such injuries in concluding that West was competent.  The record regarding West's mental history thus supports the state court's factual determination.

West is therefore not entitled to relief on this ground.

**Grounds 5, 8, 10.**     *Ineffective Assistance of Counsel*

West also argues that his retained counsel was ineffective for a number of reasons.  To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Where a habeas

petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard.  *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009).  Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, West must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).  An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

West first argues that counsel was ineffective with regard to the change of plea hearing. But as discussed more fully with regard to Ground 1, West cannot show that his plea was involuntary or unknowing.  Nor does West show that retained counsel unlawfully induced West to accept the deal, or that he would have otherwise rejected it.

West also contends that counsel was ineffective at sentencing because he submitted a "perjured" statement that West wished to withdraw his plea to avoid "the harsh time he was facing" rather than his actual reason—that West was unaware that he was not guaranteed a spot in a mental health facility.  But the record does not indicate that counsel made any such statement.  Indeed, the only reference to a withdrawal motion was the trial judge's sole statement, "I should indicate that I have reviewed the file carefully.  I find no reason or grounds to withdraw the plea."  West therefore fails to demonstrate that counsel was ineffective.

Finally, West faults counsel for not filing a certificate of probable cause.[11]  Although West does not indicate in his Petition that he either instructed his counsel to file a certificate of probable cause or that his counsel failed to consult with him regarding an appeal, the record arguably reflects that he "reasonably demonstrated to counsel that he was interested in appealing," *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000), because counsel filed a notice of appeal.  In *Flores-Ortega*, the petitioner argued that counsel's deficient performance deprived him of "a notice of appeal and hence, an appeal altogether."  *Id.* at 483.  The Supreme Court held that prejudice will be presumed where the defendant could show that his counsel's deficient

---

[11]     California Penal Code § 1237.5 provides:

No appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere, or a revocation of probation following an admission of violation, except where both of the following are met:

(a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings.

(b) The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court.

performance "actually cause[d] the forfeiture of the defendant's appeal," *i.e.*, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 483-84.

But here, West was not deprived of an "appellate proceeding altogether." *Id.* at 483. Because counsel failed to file a notice of appeal in *Flores-Ortega*, the petitioner's claims were never formulated in the first instance and thus, there was no basis upon which to make a finding with respect to actual prejudice. *See Stewart v. Runnels*, No. CIV S–03–2670, 2008 WL 590471, at *8 (E.D. Cal. Feb. 29, 2008), Report and Recommendation adopted by 2008 WL 598118 (E.D.Cal. Mar. 4, 2008). Here, counsel filed a timely notice of appeal, and West was appointed counsel who submitted an appellate brief. Thus, counsel's failure to file the certificate of probable cause did not lead to a forfeiture of the proceeding itself. As such, the presumption of prejudice articulated in *Flores-Ortega* does not apply to West's ineffective assistance of counsel claim. *See Stewart*, 2008 WL 590471, at *11 (concluding that the presumption of prejudice did not apply where trial counsel filed a timely notice of appeal, but failed to request a certificate of probable cause). Rather, West must demonstrate that there is a reasonable probability that, but for counsel's error, he would have prevailed on appeal. *See Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989); *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000).

West fails to show the requisite prejudice here. West does not show that the California state courts would have granted his request for a certificate of probable cause had counsel filed the request, or otherwise demonstrate that he would have prevailed on appeal. Because the appellate briefs are not included in the record before this Court, it is not clear whether West even attempted to raise on direct appeal claims that the Court of Appeal declined to consider for lack

-29-

of probable cause.[12]  Even if he had raised to that court on direct appeal the other claims raised in this Petition, this Court has considered and rejected all of these claims on the merits, and West has not shown the result would have been different if considered by the state court on direct appeal.  West therefore cannot show ineffective assistance of counsel, and he is not entitled to relief on any of these grounds.

**Ground 6.**　　　　　*Failure to Record*

West next alleges that the trial court failed to record the sentencing proceedings held on January 17, 2007.  But the state record includes a certified copy of the Reporter's Transcript of those proceedings.  There is no indication in the record that the reporter did not record the entirety of the proceedings, and West provides no evidence to establish any such lack of recording.  West's claim therefore must be denied.

**Ground 7.**　　　　　*Prosecutorial Misconduct*

West additionally argues that the prosecutor committed misconduct by suppressing material evidence of his lack of capacity and the fact that a conservator had been appointed.  *Brady v. Maryland*, 373 U.S. 83 (1962), and its progeny require the prosecution to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  A *Brady* violation occurs only where there is a "reasonable probability" that a different verdict would have resulted from disclosure of the information that the defendant claims was suppressed.  *Id.* at 281.  That is, "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material

---

[12]　　　　The Court of Appeal's decision does not refer to other claims or suggest that any claims were not considered because no certificate of probable cause had been obtained.

in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 678 (1985).

But West has not provided any evidence to support his conclusory allegations that the prosecutor suppressed material evidence showing West's lack of capacity or the fact that a conservator had been appointed. Rather, the issue had been extensively litigated in court, and all parties were aware of the past incompetency findings that triggered state mental hospital placement. The record also reflects that all parties were aware that West's stepfather had been appointed as his conservator. In his petition for review to the California Supreme Court, West stated that his "step-father/conservator had always been informed in advance of court dates." West fails to show that the prosecutor committed misconduct by withholding material evidence, and he is not entitled to relief on this ground.

       **Ground 9.**         *Custody Credits*

Finally, West contends that the trial court failed to give him credit for the 2,830 days that he spent in prison prior to his conviction. Under California law, inmates may receive "custody" credit for pre-sentence jail time. CAL. PENAL CODE § 2900.5; *see also People v. Taylor*, 14 Cal. Rptr. 3d 550, 562-64 (Cal. Ct. App. 2004) (summarizing types of credit available to California prisoners). "[T]he purpose of section 2900.5 is to ensure that one held in pretrial custody on the basis of unproven criminal charges will not serve a longer overall period of confinement upon a subsequent conviction than another person who received an identical sentence but did not suffer preconviction custody." *People v. Bruner*, 892 P.2d 1277, 1280 (Cal. 1995). Thus, the erroneous denial of pre-sentence credit under § 2900.5 may constitute denial of a state-created

liberty interest that is protected by the Due Process Clause. *Robinson v. Marshall*, 66 F.3d 249, 250 (9th Cir. 1995).

However, the record belies West's claim that he did not receive the 2,830 days of pre-sentence custody credit. The sentencing transcript notes that "[West] is entitled to credits of 2830 days," and the abstract of judgment lists "2830" under "credit for time served." West provides no evidence to the contrary. West therefore fails to show that he was denied any pre-sentence credit, and this claim must fail.

## V. CONCLUSION AND ORDER

West is not entitled to relief on any ground raised in his Third Amended Petition.

**IT IS THEREFORE ORDERED THAT** the Third Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court grants a Certificate of Appealability solely with respect to his claim that the trial court abused its discretion in denying a fourth competency hearing. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"

(quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: September 28, 2016.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge